*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Guardianship of ROBERTA MORE ASPLUND.

---

GEORGETTE E. DAVID, Guardian of ROBERTA MORE ASPLUND, a legally protected person,

        Appellee,

v

RANDALL ASPLUND,

        Appellant,

and

KATHLEEN M. CARTER,

        Appellee.

UNPUBLISHED
December 15, 2022

No. 361556
Washtenaw Probate Court
LC No. 17-001137-GA

---

Before: HOOD, P.J., and SWARTZLE and REDFORD, JJ.

PER CURIAM.

Randall Asplund has continued to challenge the probate orders and conservatorship concerning his mother Roberta More Asplund. In the present matter, the probate court ordered that Randall was not permitted to have further contact with Roberta because of his continued improper behavior. Randall appeals the issuance of the personal protection order. We affirm.

This Court has summarized the facts of this case, in prior unpublished cases, as follows:

On August 21, 2017, Roberta suffered a brain aneurysm, which impaired her cognitive functions. She was 91 years of age at the time. Roberta's daughter, Karin Asplund, petitioned the probate court for the appointment of a conservator and a guardian with the agreement of her siblings, Randall and Richard Asplund.

-1-

In December 2017, the probate court appointed Georgette David to be Roberta's guardian and appointed another person to be her conservator. The record showed that Roberta improved considerably after her surgeries to correct the aneurysm but that she was still cognitively impaired.

Beginning in January 2018, Randall filed the first of numerous petitions and other filings challenging the administration of Roberta's guardianship and conservatorship. There was evidence that Randall harassed Roberta's caregivers, challenged every action taken by Roberta's fiduciaries, and enlisted Roberta as an ally in his disputes with Karin, Richard, Roberta's caregivers, and her fiduiaries. The evidence tended to show that he manipulated Roberta and prevented her from adjusting to her life changes. [*In re Conservatorship of Roberta More Asplund (Asplund I)*, unpublished per curiam opinion of the Court of Appeals, issued November 24, 2020 (Docket Nos. 349388 and 349401), p 2.]

This Court affirmed the trial court's findings, and reiterated that Randall was a challenge for those persons who were trying to care for Roberta. *In re Guardianship of Roberta More Asplund (Asplund II)*, unpublished per curiam opinion of the Court of Appeals, issued November 24, 2020 (Docket Nos. 351166 and 351168), p 8.

Challenges to Roberta's conservatorship continued throughout the pendency of the appeals. After several hearings and petitions, the probate court appointed a guardian for Roberta who was limited to the purpose of supervising visitation between Randall and Roberta. The probate court ordered that the limited-guardian was not to allow Randall to discuss certain topics with Roberta, including the court proceedings, Roberta's civil rights, or Roberta's placement.

The original limited-guardian was no longer able to serve after a few months, and the probate court appointed Randall's friend, Holly Eliot, to serve as the limited-guardian. After several months, Eliot moved to terminate her limited guardianship because she was unable to restrain Randall from discussing prohibited topics with Roberta. At the same time, Glastonbury Adult Foster Care, Roberta's placement, had issued Roberta a 30-day notice to vacate because Randall filed complaints against Glastonbury to the Department of Licensing and Regulatory Affairs and Adult Protective Services, as well as got into arguments with the staff that cared for Roberta. After an evidentiary hearing that involved Roberta's well-being, the probate court granted Eliot's resignation. It also ordered that Randall was not permitted to have further contact with Roberta because his behavior was inappropriate and the Glastonbury manager stated that Roberta would not need to vacate if Randall did not visit her anymore. The probate court denied Randall's motion for reconsideration, and Randall now appeals.

"We review a trial court's determination on whether to issue a [personal protection order] for an abuse of discretion." *In re JCB*, 336 Mich App 736, 745; 971 NW2d 705 (2021).

Randall first argues that the probate court did not have the authority, or otherwise did not follow the proper procedure, to issue a personal protection order against him. The probate court, however, entered the personal protection order as equitable relief stemming from its inherent authority under MCL 700.1302(c). A court sitting in equity has long held the inherent authority to enforce its directives and mold its relief to the character of the case. "[O]nce a court of equity

-2-

acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy." *Allard v Allard*, 318 Mich App 583, 596; 899 NW2d 420 (2017) (cleaned up). Accordingly, the probate court had the authority to enter injunctive relief consistent with MCR 3.310 to protect Roberta's welfare and resolve the dispute over visitation.

Next, Randall argues that the probate court did not explain its reasoning. The record demonstrates, however, that Eliot desired to withdraw as limited-guardian because Randall refused to comply with the probate court's order regarding his visitation with Roberta, and it was reported that Randall's behavior was jeopardizing Roberta's placement. Moreover, the transcript shows that the probate court considered the full history when determining whether and how to fashion a remedy.

The probate court explained that Randall had a long history of engaging in inappropriate behaviors directed at the professional caregivers who have been hired to help Roberta. His conduct had resulted in the need to move Roberta from her placement. Randall's further argument, that the probate court did not have evidentiary support for its claims about his past conduct, is without merit. As explained, this Court has already affirmed the probate court's findings regarding Randall's conduct in prior appeals.

Even though the probate court recognized that it made every effort to balance Roberta's desire to have contact with Randall, Randall's visitations continued to cause Roberta problems. The probate court articulated several reasons for its decision on the basis of the relevant evidence presented to it. The probate court's personal protection order was not outside the range of principled outcomes when considering Roberta's health, safety, and placement. The probate court did not abuse its discretion in ordering Randall no longer to have contact with Roberta.

Lastly, Randall makes several arguments that the probate court violated his constitutional rights as well as his right to due process. These arguments, however, are without merit. Randall's constitutionally guaranteed right to associate with others, namely Roberta, was not infringed upon when Roberta's guardian asserted Roberta's right not to associate with Randall. The controlling factor was whether it was in Roberta's best interest to limit Randall's visits. As discussed, it was in Roberta's best interest when considering that Randall's visits were threatening Roberta's placement.

Further, Randall's right to due process was not violated by the probate court's refusal to provide Randall with more than notice of the proceedings and the meaningful opportunity to be heard or the refusal to hold another evidentiary hearing. Even though Randall's interests were significant, they did not amount to a fundamental liberty interest and, thus, they did not require more than notice to Randall and his meaningful opportunity at the hearings. Randall was present at a majority of the hearings, and he was also represented by counsel. Additionally, the probate court held several formal hearings and had made pertinent findings of fact concerning Randall's behavior. "Although it is not compulsory for a trial court to hold an evidentiary hearing before the issuance of an injunction, some formal hearing is required." *Campau v McMath*, 185 Mich App 724, 728; 463 NW2d 186 (1990).

Affirmed.

/s/ Noah P. Hood
/s/ Brock A. Swartzle
/s/ James Robert Redford